Connolly, J.
Plaintiff, Jane W. Lajoie, brings this action against her former employer seeking to recover for retaliatory termination under G.L.c. 151B, wage discrimination pursuant to G.L.c. 149, §105A, and employment discrimination based on age and sex. The defendants move to dismiss the complaint alleging that Lajoie is bound by the National Association of Security Dealers (NASD) rules and by-laws to submit these claims to arbitration. For reasons set forth below, the defendants’ motion to compel arbitration and dismiss the complaint is allowed.
BACKGROUND
The defendant FMR Corporation (FMR) is a Massachusetts corporation which, in conjunction with its many subsidiaries, does business under the registered service mark “Fidelity Investments” (Fidelity). The defendant James Curvey is President of Fidelity Capital, Inc.[2] and a director of FMR. The defendant Strategic Advisers, Inc. (SAI) is a wholly owned subsidiary of FMR. As a business unit of SAI, Fidelity Publishing is responsible for publishing the Mutual Fund Guide[3] (the Guide). Fidelity Brokerage Services, Inc. (FBSI), a retail broker-dealer, is a wholly owned subsidiary of FMR. FBSI is a licensed member of the NASD. Fidelity employees who are required to be registered with the NASD customarily register through FBSI.[4]
FMR hired Lajoie in February 1987 as a part-time data analyst associated with the publication of the Guide. In January 1991, Fidelity Publishing was reorganized into two separate business units: Fidelity Publishing and Fidelity Capital. At this time, Lajoie was placed in charge of Fidelity Publishing. She reported to Fidelity Capital Managing Director, John Remondi, who in turn reported to Fidelity Capital President, defendant James Curvey.
As a result of this reorganization, the Guide’s scope and purpose was modified, making the publication subject to certain “sales literature” or “advertising” rules of the NASD and the Securities and Exchange Commission. These rules essentially required that each issue of the Guide be signed and verified by a Fidelity principal who was registered with the NASD and then filed with the NASD. Lajoie, therefore, applied to become registered with the NASD.
In order to register with the NASD, Lajoie signed a Uniform Application for Securities Industry Registration (Form U-4). In addition to various other information, the Form U-4 listed FBSI as the “Firm Name” (item 4) and February 24, 1987 as the “Employment Date” (item 5). The Form U-4 also contained an arbitration clause which reads in pertinent part:
I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgement in any court or competent jurisdiction.
The compound inquiry here is first, whether these particular defendants are covered by the language in the arbitration clause contained in the Form U-4; and if so, whether these particular claims are required to be arbitrated under the NASD Code.
DISCUSSION
A party aggrieved by the failure or refusal of another to proceed to arbitrate under an agreement may apply to the Superior Court for an order directing the parties to proceed to arbitration. G.L.c. 251, §2(a) “[A] provision in a written contract to submit to arbitration any controversy thereafter arising . . . shall be valid, enforceable, and irrevocable, except upon the grounds that exist at law or in equity for the revocation of any contract.” G.L.c. 251, §1.
In order for a person to be compelled to arbitrate a dispute under a contract containing an arbitration agreement, that person must show that he is a party to that contract or that the person he is seeking to compel to arbitrate is a party to the contract. See Computer Corp. of America v. Zarecor, 16 Mass.App.Ct. 456 review denied 390 Mass. 1103 (1983). The language of the arbitration clause in Form U-4 clearly covers each defendant in this action. As the clause reads, Lajoie “agree(ed) to arbitrate any dispute, claim or controversy that may arise between [her] and [her] firm, or a customer, or any other person . . .” Arbitration is not restricted only to possible claims between FBSI and Lajoie *494 simply because FBSI is named as “The Firm” in item 4 on the Form U-4. It is undisputed that FBSI is the only Fidelity entity with NASD membership and is not a party to this action. FBSI is the entity through which Fidelity employees register with the NASD. It was for this reason only that the Form U-4 names FBSI. In fact, in the very next item, item 5, Lajoie lists February 24, 1987 as the “Employment Date.” This is the date she was hired by FMR, not FBSI.
In addition, Lajoie sought registration with the NASD in connection with her job responsibilities. Such registration benefitted her employer, FMR; her coworkers at SAI; and her supervisor, Mr. Curvey. To find otherwise goes against the broad language of the arbitration clause which reads that Lajoie would “arbitrate any dispute . . . between me and . . . any other person, that is required to be arbitrated.” (Emphasis added.) “Clearly the clause anticipated that there will be disputes with individuals who are not parties to the agreement that will be arbitrated if required by the rules.” Prudential Ins. Co of America v. Shammas, 865 F.Supp. 429, 431 (W.D. Mich 1993) (holding that claim against district managers must proceed to arbitration) .
As the defendants qualify as persons considered by the agreement, the next inquiry is whether Lajoie’s claims are “required to be arbitrated under the rules, constitutions, or by-laws of [NASD], ’’Lajoie’s complaint asserts claims for employment discrimination based on age and sex, retaliatory termination, and wage discrimination. According to Part II, section 8(a) of the NASD Code of Arbitration Procedure (Code):
Any dispute, claim, or controversy eligible for submission under Part I of the Code[5] between or among members and/or associated persons, and/or certain others arising in connection with the business of such members(s) or in connection with the activities of such associated person(s), or out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of: . . . (3) a person associated with a member against a person associated with a member.
Thus, the dispositive issue her is whether these present claims arise “out of the employment or termination of employment of such associated person(s) with such member.” There is no dispute that Lajoie’s claims “arise out to the termination of employment”; therefore, they will be subject to arbitration under section 8(a) of the NASD Code if Lajoie is an “associated person(s) with a member.”
The by-laws define “person associated with a member” or “associated person of a member” as
every sole proprietor, partner, officer, director, or branch manger of any member, or any natural person occupying a similar status of performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member, whether or not any such person is registered or exempt from registration with the Corporation pursuant to these ByLaws;
In evaluating Lajoie’s relation to FBSI, the only Fidelity entity which is a NASD member,[6] it is clear that she is an “associated person of a member.” After the Guide was modified, it became subject to certain NASD Code provisions, one of which required it to be filed with the NASD. In order to be properly filed with the NASD, a Fidelity principal had to sign and verify that the Guide complied with the regulations governing mutual fund advertising. Since Lajoie was in charge of Fidelity Publishing, such verification was her responsibility. Accordingly, she registered with NASD through FBSI. While Lajoie may not be a “partner, officer, director, or branch manger of any member” there can be no question that the she was a “natural person occupying a similar status of performing similar functions, or [a] natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member.”
Lajoie alleges that the defendants failed to adequately compensate and promote her after her job responsibilities increased. Her job became more demanding as a result of becoming registered with the NASD. These claims as they are asserted against these defendants are clearly contemplated by the arbitration clause and the NASD Code. They arise out of the employment and termination of employment of Lajoie and are required to be arbitrated.
ORDER FOR JUDGMENT
For all of the foregoing reasons, it is hereby ORDERED that the motion to compel arbitration and dismiss the complaint is ALLOWED.

Fidelity Capital, Inc. manages a group of businesses which are wholly owned or owned in partnership by it, FMR, or their affiliates.

Nhe Mutual Fund Guide is a monthly newsletter containing advertising and information about the performance of many retail mutual funds.

FBSI is not a party in this action.

Part I states in pertinent part that the Code is
for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member ... (3) between or among members or associated persons and public customers, or others, . . .

The NASD by-laws define “member” as “any broker or dealer admitted to member in the [NASD].”